UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

OFF SPEC SOLUTIONS, LLC,

                 Plaintiff,

vs.

H.J. HEINZ COMPANY, L.P.,

                 Defendant.

Case No. 1:16-cv-00123-REB

**MEMORANDUM DECISION AND
ORDER ON MOTION TO DISMISS**

Currently pending before the Court is a Motion to Dismiss (Dkt. 8) in which the

Defendant, H.J. Heinz Company ("Heinz") asks the Court to dismiss or strike various

claims for relief from the Complaint filed by Plaintiff Off Spec Solutions, LLC ("Off

Spec"). The parties have consented to the jurisdiction of the undersigned United States

Magistrate Judge. Having reviewed the briefing related to the Motion to Dismiss, and

having determined that the case is suitable for decision without argument, the Court now

enters the following order.

## I. BACKGROUND

This case is a contractual dispute arising from an agreement between the parties

regarding the sale of potato by-products. Off-Spec, located in Caldwell, Idaho, is in the

business of managing and distributing food waste products. (Complaint, Dkt. 1-2 at ¶ 4).

MEMORANDUM DECISION AND ORDER ON MOTION TO DISMISS - 1

The core of Off-Spec's business is to obtain food waste that is not suitable for human consumption and to market these waste products as animal feed. (*Id.*). Off-Spec contracted with Heinz to purchase certain potato by-products from Heinz's potato processing facility in Oregon. According to the Complaint, Heinz originally solicited a bid from Off-Spec for the purchase and hauling away of a single type of potato by-product known as "press cake." However, Off-Spec alleges that before the parties finalized their agreement, Heinz proposed that Off-Spec purchase *all* of its potato by-products, which included press cake and things such as potato peelings and cull potatoes.

Heinz, however, disputes that the contract was actually intended to cover all potato by-products besides just the press cake. The Agreement defines potato "product" as "all solid potato by-product such as cull potatoes, fries, etc., Press Cake, dry peel (hereinafter collectively referred to as 'plant by-products')" (Agreement, Dkt. 1-2 p. 13.). Heinz, on the other hand, asserts that the definition of plant by-products was a typographical error and entirely inconsistent with the parties' negotiations and true agreement. (Brief in Support of Motion to Dismiss, Dkt. 8-1, p. 2). Heinz further asserts that the parties mutually understood that Off-Spec intended to purchase only the press cake, not other types of potato by-product, and that Off-Spec only attempted to assert that it was entitled to purchase *all* by-products when grain prices fell, thereby diminishing the value of the potato press cake as animal feed. Off-Spec, however, alleges that the contract, had it truly covered only the press cake, would not have been profitable, and entering into the contract made no sense from a business perspective unless it had the right to purchase *all*

MEMORANDUM DECISION AND ORDER ON MOTION TO DISMISS - 2

potato by-products. Off-Spec also alleges that Heinz withheld accurate information on other matters, namely 1) the volume of press cake it intended to produce throughout the year, and 2) the composition of the press cake, which, depending on the time of year it was produced, sometimes contained harmful amounts of iron  that rendered it useless as animal feed.

Off-Spec alleges that soon after the agreement was signed, Heinz tried to renegotiate its terms and refused to provide Off-Spec with any by-products besides just the press cake. Because hauling only press cake was not economically viable for Off-Spec, the parties agreed to modify the Agreement's terms, at least until Heinz was in a position to sell all its potato by-products to Off-Spec. According to Off-Spec, the parties mutually agreed to a contract modification that called for Off-Spec to purchase only the amount of press cake that it could resell to local feed lots and dairies, and for Heinz to pay Off-Spec to haul away and dispose of the remaining, unsaleable press cake. (*Id.* ¶ 13). Thereafter, Off-Spec alleges that it tried to keep Heinz accurately apprised of the credit balances between what Off-Spec owed for purchase of the saleable press cake and what Heinz owed Off-Spec for hauling and disposal fees. (Id. ¶ 15). Off-Spec claims that Heinz only disputed these obligations once Off-Spec demanded payment for its services in hauling away the press cake.

Off-Spec now brings various claims for breach of contract, breach of the covenant of good faith and fair dealing, equitable estoppel, quasi-estoppel, unjust enrichment and fraud.  Off-Spec also seeks a declaratory judgment pursuant to Idaho Code section 10-

MEMORANDUM DECISION AND ORDER ON MOTION TO DISMISS - 3

1201 *et seq.* Heinz asks the Court to dismiss each of Off-Spec's various causes of action. As part of this motion, Heinz seeks a ruling that Oregon rather than Idaho law should apply to govern the substantive dispute between the parties.

## II.  LEGAL STANDARDS

### A.    Standard for Rule 12(b)(6) Motion

Though Heinz refers to its motion variously as a "Motion to Dismiss or Strike," in most of its arguments, it is essentially asking that the Court dismiss each individual cause of action asserted by Off-Spec. Therefore, the relief that Heinz requests is more in the nature of a motion to dismiss than a motion to strike, and the Court therefore analyzes the parties' arguments in the context of the legal standards applicable to motions to dismiss.[1]

A motion to dismiss for failure to state a claim challenges the legal sufficiency of the claims stated in the complaint. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir.2011). To sufficiently state a claim to relief and survive a 12(b) (6) motion, the pleading "does not need detailed factual allegations," however, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To satisfy the notice pleading standards of Rule 8(a) a complaint need not contain detailed factual allegations, but at the same time, mere

---

[1] Heinz has a somewhat different characterization for Count II, the breach of contract claim, in that it is asking the Court to strike paragraph 23 of the Complaint, which alleges that Heinz "breached the Agreement by failing or refusing to provide Off-Spec all plant by-product and in only providing it with the much less valuable Press Cake." Though characterized as a motion to strike, the Court nonetheless treats this request as a Rule 12(b)(6) motion to dismiss as well, because it is focused on foreclosing an entire theory or avenue of relief.

"labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* Rather, there must be "enough facts to state a claim to relief that is plausible on its face." Id. at 570. *See also, Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1990), or where the allegations on their face "show that relief is barred for some legal reason." *Jones v. Bock,* 549 U.S. 199, 215 (2007). In deciding whether to grant a motion to dismiss, the court must accept as true all well-pleaded factual allegations in the pleading under attack. *Iqbal,* 556 U.S. at 663.

Finally, even if the Court concludes that any of Off-Spec's claims are subject to dismissal, it must still consider whether it is proper to grant Off-Spec leave to amend. Even after *Iqbal* and *Twombly,* "a dismissal without leave to amend is [still] improper unless it is beyond doubt that the complaint could not be saved by any amendment." *Harris v. Amgen, Inc.,* 573 F.3d 728, 737 (9th Cir. 2009).

### III. ANALYSIS

#### A.    Choice of Law Issue

Because the case was filed in Idaho state court but also involves events that occurred at least partially in Oregon, the parties disagree as to whether Oregon or Idaho law should apply. Off-Spec argues that Idaho bears the most significant relationship to the transactions giving rise to the lawsuit; Heinz makes the same argument in favor of Oregon law. (The parties agree, however, that New York state bears no reasonable

MEMORANDUM DECISION AND ORDER ON MOTION TO DISMISS - 5

relationship to the case and that the choice of law clause in the written contract is unenforceable). Although Plaintiff suggests that the choice of law analysis would be better left to a later stage of the proceedings, when the Court would have the benefit of a more developed record, the Court disagrees. "[C]ourts need not wait for discovery before conducting choice of law analyses where the pleadings, construed in the plaintiff's favor, contain all necessary facts." *Hamby v. Ohio Nat. Life Ins Corp.,* 2012 WL 2568149 at *2 (D. Hawaii 2012).

"[W]hen a federal court considers claims based on state law, the forum state's choice of law rules apply." *In re Sterba,* 516 B.R. 579, 582 (9th Cir. 2014). Therefore, the Court turns to Idaho cases on choice of law issues in deciding whether the substantive law of Oregon or Idaho applies to this dispute. Idaho courts, as a general rule, follow the approach of  Restatement (Second) of Conflict of Laws when deciding choice of law disputes. *Grover v. Isom,* 137 Idaho 770, 773 (Idaho 2002) (adopting the Restatement's approach in tort cases); *Carrol v. MBNA America Bank*, 220 P.3d 1080 (Idaho 2009) (applying the Restatement in contract cases); *Seubert Excavators, Inc. v. Anderson Logging Co.,* 889 P.2d 82, 85 (Idaho 1995) (same). Though Idaho Courts typically first decide what type of case is at issue and apply the Restatement's guidelines applicable to such cases, section 6 of the Restatement provides overarching factors that apply to all choice of law questions. Those factors are: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;

MEMORANDUM DECISION AND ORDER ON MOTION TO DISMISS - 6

(d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied. RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 6. *See also, Grover v. Isom,*  137 Idaho 770, 773 (Idaho 2002).

Heinz asks the Court to adopt section 191 of the Restatement, pertaining to cases arising from contracts for the sale of goods. It reads:

> The validity of a contract for the sale of an interest in chattel and the rights created thereby are determined . . . by the local law of the state where delivery of the chattel occurs, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in section 6 to the transaction and the parties.

RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 191.

Because Idaho courts have not explicitly adopted this section of the Restatement, this Court considers not just the prior adoption of other sections of the Restatement by Idaho courts but also decisional law of other states in deciding whether Idaho's Supreme Court would apply section 191. "In the absence of controlling forum state law, a federal court sitting in diversity must use its own best judgment in predicting how the state's highest court would decide the case. . . . In so doing, a federal court may be aided by looking to well-reasoned decisions from other jurisdictions." *Mangold v. California Public Utilities Com'n.,* 67 F.3d 1470, 1479 (1995).

Here, the Court is easily persuaded that Idaho would adopt section 191 of the Restatement, if the question of whether to do so were squarely raised. Idaho courts have adopted the Restatement's approach in a variety of other instances, and every other court

MEMORANDUM DECISION AND ORDER ON MOTION TO DISMISS - 7

to have considered the issue has adopted the approach set forth in section 191 of the Restatement. *See, e.g., Global Petromarine v. G.T. Sales & Mfg., Inc.,* 577 F.3d 839 (Eighth Circuit 2009); *Gusse v. Damon Corp.,* 470 F.Supp.2d 1110 (C.D. California 2007); *Bray v. Monaco Coach Corp.,* 371 F.Supp.2d 1135, 1138 (D. Arizona 2005); *Maine Surgical Supply Co v. Intermedics Orthopedics, Inc.,* 756 F.Supp. 597 (D. Maine 1991); *Travenol Laboratories, Inc. v. Zotal, Ltd.,* 474 N.E.2d 1070, 1073 (Mass. 1985). Additionally, applying section 191 harmonizes with the goals of conflict of law analysis, as embodied by the factors enumerated in section 6 of the Restatement – particularly factors 6(d)-(f) which focus on the protection of justified expectations, certainty, predictability, uniformity of result, and ease in determining the applicable law. The needs of the interstate commerce systems are also well-served by applying the rule of section 191, because to do so helps achieve uniformity and predictability of results in transactions of the type covered by the Uniform Commercial Code.[2] Idaho has adopted a version of the Uniform Commercial Code, so Idaho law or policy in that arena is similarly served by applying section 191.

The next question is whether the transactions giving rise to this lawsuit are ones to which section 191 and the Uniform Commercial Code would apply. The answer to this

---

[2] The question whether a contract involves the "sale of an interest in chattel" under section 191 is co-extensive with the question of whether it involves the sale of goods under the Uniform Commercial Code. The terminology used by both section 191 and the U.C.C. are intended to describe transactions that do not involve real property or the provision of services.

MEMORANDUM DECISION AND ORDER ON MOTION TO DISMISS - 8

question is yes, because the relevant agreement or agreements involve the sale of an interest in goods or chattel.  Plaintiff, while appearing to concede that the *original* agreement involved the sale of goods or chattel, argues that the modified contract was not solely a contract for the sale of goods, but rather, a hybrid contract involving the sale of goods *and* the provision of services. Thus, Plaintiff argues that the question of whether the U.C.C. (and by extension, section 191) would apply cannot be resolved at this stage of the proceedings, because the record lacks the development which would enable the Court to determine which aspect of the modified contract predominated.

Such an argument stretches the record too far. The sole purpose of the original agreement was for Off-Spec to purchase certain potato by-products from Heinz.  It is true that under the modified agreement Off-Spec agreed to temporarily haul away all the press cake that Heinz produced, even if Off-Spec could not use it. However, the goods had to be removed and transported from the Heinz facility in order for the good to change hands. Heinz wanted the by-product out of its facility and Off-Spec wanted the by-products into its hands, so that it could then resell those by-products. Off-Spec also eventually wanted to put itself in a position where it could obtain *all* the potato by-product that Heinz produced. Off-Spec would argue that modifications to the agreement transformed it from the purchaser of goods into a garbage hauler, but the Court disagrees with this characterization. Whatever accommodation it may have made to Heinz with respect to the unusable press cake, at the heart of the agreement Off-Spec wanted to obtain potato by-

MEMORANDUM DECISION AND ORDER ON MOTION TO DISMISS - 9

products it could resell, even if along the way it had to haul away some by-products that ultimately it would *not* be able to resell.

Hence, the sale of goods aspect of the transaction predominated, and both the U.C.C. and section 191 of the Restatement apply. Considered in that framework, Oregon law applies to all stages of the parties' dispute. While Idaho does bear some relationship to the parties' transaction, that relationship is not weighty enough on these facts to implicate the exception to section 191's usual rule that the law of the state where the goods were delivered will control the case.

### B.    Viability of Plaintiff's Individual Claims

The Court now turns to Defendant's arguments for dismissing certain of the claims for relief, in light of the legal standards applicable to motions to dismiss discussed in section II-A of this Order.  The Court applies Oregon law, but will first address those claims as to which there is no substantive difference between Idaho and Oregon law.

### 1.  Breach of Contract (Count Two)

Heinz contends that the Court should dismiss (by "striking") Off-Spec's breach of contract claim that Heinz failed to provide all potato by-products. As indicated previously, there is no essential difference between Heinz's request to strike Paragraph 23 of Count II and a motion to dismiss, because Heinz is essentially requesting that the Court foreclose an entire avenue of relief.

Heinz argues that there is an inherent inconsistency between Off-Spec's breach of contract claim under the original, unmodified, agreement and its allegations that the

MEMORANDUM DECISION AND ORDER ON MOTION TO DISMISS - 10

original agreement was amended so that Off-Spec would purchase only that press cake that it could resell and haul away the rest in exchange for reimbursement.  Heinz argues that Off-Spec cannot recover under both the original and the modified agreement.

It is correct, of course, that a party cannot obtain a double recovery on breach of contract claims such as those asserted here, but the question of whether a double recovery is prohibited is premature at this stage.  At the pleading stage, "a party may state as many separate claims or defenses as it has, regardless of consistency." Fed.R.Civ.Pro 8(d)(3); *See also, Aholelei v. Dept. Of Public Safety,* 488 F.3d 1144, 1149 (9th Cir. 2007). Heinz's request to strike the breach of contract claims on the basis that they are mutually exclusive is therefore denied.

### 2.  Unjust Enrichment (Count Six).

As to the unjust enrichment claim, Heinz first argues that it is too vague to satisfy ordinary pleading standards. Second, it argues that an unjust enrichment claim is not viable where there is a valid contract. The vagueness argument fails because Off-Spec alleges that it provided Heinz with truck, trailer and labor services that Heinz needed during times of plant breakdowns, and that these services were beyond the scope of services contemplated in the modified agreement. (Complaint ¶ 39). Off-Spec further alleges that it expected payment for these services and did not receive them, and that Heinz benefitted from the work performed. (*Id.*). At a minimum, therefore, Off-Spec has stated a viable unjust enrichment claim arising from services provided that were allegedly beyond the scope of the modified agreement.

MEMORANDUM DECISION AND ORDER ON MOTION TO DISMISS - 11

The Complaint further alleges that Off-Spec intends to rely on unjust enrichment as a theory of recovery if the Court should rule that there was no enforceable contract between Off-Spec and Heinz. (*Id.* ¶ 40.) Although Heinz concedes that Oregon would recognize claims for unjust enrichment, it argues that such a claim must be stricken because Oregon law does not allow those claims where the parties agree there is an enforceable contract. However, the principal cases upon which Heinz relies hold that "a party may plead alternative claims for breach of both an express contract and an implied contract. " *Confederated Tribes of Warm Springs Reservation of Oregon v. Ambac Assur. Corp.,* 2010 WL 4876557 at *6-7 (D. Oregon 2010). *See also, Kashmir Corp. v. Patterson,* 602 P.2d 294, *49 (1979). These cases (which treat unjust enrichment claims as a form of implied contract) further hold that such alternative pleading is permissible in situations where, among other things, there is uncertainty whether the pleader can actually prove the existence of the contract at trial. Though Heinz asserts that it does not dispute the existence of an agreement between it and Off-Spec, (Defense Brief, Dkt. 8-1 at p. 15), at this stage at least, there is an obvious dispute as to what was contained in any express contract. Accordingly, dismissing the unjust enrichment claim at this early stage would not be appropriate. As a matter of pleading practice, then, this claim satisfies both the requirements of Oregon law and the requirements of federal law that a complaint state a claim that is "plausible on its face" and also suggest an entitlement to relief that "is above the speculative level." *Twombly*, 550 U.S. at 555; *Iqbal,* 556 U.S. at 678.

MEMORANDUM DECISION AND ORDER ON MOTION TO DISMISS - 12

### 3.  Fraud (Count Seven)

Heinz argues that Off-Spec's fraud claim should be dismissed for two reasons: first, because the elements of fraud have not been pled with sufficient particularity to satisfy the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure, and second, because the disclaimer or "independent investigation" clause in the original written agreement bars any claims for fraud.

The Court addresses the second argument first.  The disclaimer provision upon which Defendants rely provides:

> INDEPENDENT INVESTIGATION. It is understood and acknowledged by Off-Spec Solutions that it is purchasing and using the plant by products pursuant to its own investigation and that Heinz had made no representations or warranties other than those expressly contained herein. Except as set forth herein, HEINZ HEREBY EXCLUDES ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, AND EXPRESSLY EXCLUDES ANY AND ALL WARRANTIES AS TO MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. IT IS UNDERSTOOD BY BOTH PARTIES THAT THE INTENDED USE FOR PLANT BY-PRODUCTS IS FOR USE AS ANIMAL FEED.

(Complaint at Exhibit C) (emphasis in original).

Heinz relies on *Wagner v. McNeely,* 161 Or.App. 215 (Ct. App. 1999), in which the Oregon Court of Appeals held, without significant discussion, that claims for fraud and misrepresentation were defeated by the opposing party's express disclaimers of representations and guarantees. However, shortly after the holding in *Wagner,* the Oregon Court of Appeals reached the opposite conclusion in a different case, holding that "the

MEMORANDUM DECISION AND ORDER ON MOTION TO DISMISS - 13

mere existence of a disclaimer does not, as a matter of law, compel a conclusion that a person may not reasonably rely on a representation." *Knepper v. Brown,* 182 Or.App. 597, 605 (Or. App. 2002).  The Oregon court emphasized that although the existence of a disclaimer was relevant to the element of justifiable reliance in a fraud claim, the question of whether the disclaimer completely negated the element of justifiable reliance was for the jury to decide. This same approach was followed in a recent Oregon federal court case in a contract case arising under Oregon law. *See REC Boats, LLC v. RP/PHL Marine Leasing, Inc.* 2012 WL 6725838 (D. Oregon 2012).

In the instant case, the disclaimer language of the original written agreement references the fact that the potato by-products would be used as animal feed. Thus, even if the disclaimer has some relevance to other aspects of Plaintiff's fraud claim, it would not appear to preclude any claim arising from Heinz's alleged misrepresentation about the iron content of the press cake and its suitability for use as animal feed. For these reasons, the Court is not persuaded that the fraud claim should be dismissed at this juncture purely because of the existence of the independent investigation clause.[3]

---

[3] *Conzelmann v. Northwest Poultry & Dairy Products Co.* 225 P.2d 757 (Oregon 1950), also does not appear to have any applicability to the circumstances alleged here, at least in the context of a motion to dismiss. In that case, the court held that a party who has full knowledge of the circumstances giving rise to an alleged fraud, and yet nonetheless proceeds to make a contract with an opposing party, will not later be allowed to pursue such a claim for fraud if he or she entered into the contract with full knowledge of the allegedly fraudulent conduct. Here, however, Plaintiff alleges that it did not later receive the benefit of the renegotiated contract. Therefore, even if the *Conzelmann* case were still good law, the circumstances in this case are not comparable.

MEMORANDUM DECISION AND ORDER ON MOTION TO DISMISS - 14

The Court does, however, agree that Off-Spec has not adequately pled the elements of fraud with sufficient particularity to satisfy Rule 9(b) and the elements of a fraud claim under Oregon law. "In Oregon, the elements of actionable fraud consist of: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner  reasonably contemplated;  (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury." *Chaney v. Fields Chevrolet Co.,* 484 P.2d 824, 826-27 (Oregon 1971).

Because the Complaint does allege that Heinz made several misrepresentations during the course of its dealings with Off-Spec, Off-Spec may well be able to state a claim for fraud. However, the Complaint does not do so in its current form, and instead pays scant attention to the task of setting forth the facts giving rise to an alleged fraud claim and of tying these facts to each of the elements of such a claim. As currently constituted, the Complaint does not satisfy the heightened pleading standards of Rule 9(b), which are applicable to fraud claims. The Court will therefore order that this claim be dismissed, albeit with leave to amend.

### 4.  Equitable Estoppel and Quasi Estoppel (Counts Four and Five)

As to these claims, there are potentially substantive differences between Idaho and Oregon law, and for the reasons previously described the Court will apply Oregon law. Off-Spec concedes that Oregon law does not recognize a claim for equitable estoppel, although the courts of that state allow estoppel-based theories as a means of proving other

MEMORANDUM DECISION AND ORDER ON MOTION TO DISMISS - 15

claims. Plaintiff's Brief, Dkt. 13,  p. 11; *See also, Gilman v. Emel,* 747 P.2d 390, 392 (1987); *Howell v. Oregonian Pub. Co.*, 728 P.2d 106 (Oregon Ct. App. 1986).  Off-Spec may therefore not proceed with equitable estoppel as an independent claim for relief, and that claim will be dismissed.

It is unsettled whether Oregon law would recognize a claim for quasi-estoppel, as opposed to equitable estoppel. In the most recent pertinent case, *Day v. Advanced M& D Sales, Inc.,* 86 P.3d 678, 695 (Oregon 2004), the Oregon Supreme Court, sitting en banc, assumed without deciding that Oregon courts would recognize such a claim. However, the Court's assumption in that case that Oregon would recognize a claim for quasi-estoppel is dicta, because the Court ultimately concluded that the plaintiff could not proceed with that claim for entirely unrelated reasons.

The parties have not cited a single case in which in which Oregon courts have recognized *any* type of estoppel as an independent cause of action, as opposed to allowing that theory as a defense, or as a means of proving facts necessary to establish other claims. Nor can the Court locate such a case. In addition to the decisions in *Gilman* and *Howell,* which concern equitable estoppel, Oregon courts have also declined to recognize promissory estoppel as an independent cause of action. *Natkin & Co. v. H.D. Fowler Co.,* 876 P.2d 319, 321 (Or. App. 1994) (holding that promissory estoppel is not an independent cause of action, but a substitute for consideration where a promisee has relied on a promise to his detriment).

Nor have the parties articulated a persuasive distinction between quasi-estoppel and equitable estoppel such as might support the notion that Oregon would refuse to recognize one but not the other. Therefore, despite the anomaly created by the dicta in the *Day* decision, the Court concludes the Oregon Supreme Court would not treat quasi-estoppel differently than any other type of estoppel claim. Therefore, while Oregon law may provide for various estoppel-type evidence to be used as a means of proving other claims or defenses, it stops there.  There is no independent estoppel-based claim for relief under Oregon law. Counts Four and Five will therefore be dismissed. Though Plaintiff may not re-plead these counts as separate causes of action, if it so chooses, its amended pleadings may address any estoppel-based evidentiary theory recognized by Oregon courts in the context of any independently viable cause of action.

### 5.  Breach of the Covenant of Good Faith and Fair Dealing (Count Three)

The Court next addresses whether Off-Spec may proceed with its claims for breach of the implied covenant of good faith and fair dealing.  Heinz argues that no such claim exists under the Uniform Commercial Code, pointing to UCC language which provides that "every contract or duty within the Uniform Commercial Code imposes an obligation of good faith in its performance and enforcement." O.R.S. § 71.3040. Though this section specifically references a duty of good faith, the official comments to this section clarify that while the failure to act in good faith may support a claim for breach of the contract itself, "this section does not support an independent cause of action for failure to perform or enforce in good faith."

MEMORANDUM DECISION AND ORDER ON MOTION TO DISMISS - 17

Oregon appellate courts have not interpreted this particular provision of the UCC or the accompanying official comments.  Other courts have ruled that this section does indeed eliminate an independent claim for breach of the covenant of good faith and fair dealing. *See, e.g. Advancemed, LLC v. Pitney Bowes Credit Corp.,* 2006 WL 1007467 at *3 (E.D. Kentucky 2006); *Gilson v. Rainin Instrument LLC,* 2005 WL 1899471 at *2 (W.D. Wisconsin 2005); *Fifth Third Bank of Indiana v. The Morley Group,* LLC, 2005 WL 4882768 at *1-2 (S.D. Indiana 2005); *Lubbock Beverage Co., Inc. v. Miller Brewing Co.,* (N.D. Texas 2002).

Off-Spec does not suggest that Oregon courts would reach a contrary result, but instead argues that it is not clear whether the UCC will apply at every stage of the parties' course of dealing. The Court has already rejected this argument and concludes that the Oregon Supreme Court would hold, along with the courts referenced above, that no independent claim exists for breach of the good faith covenant in contracts for a sale of goods under the UCC.

However, whether this ruling requires outright dismissal of Count III is a separate question. As the cases identified above demonstrate, the concept of "good faith" is central to the UCC, even though there is no independent claim for breach of the implied covenant. Therefore, while the concept of "good faith" cannot be used to contradict an express term of a contract or to expand the scope of available contractual damages, courts still utilize the duty of good faith "as an interpretive tool to determine the parties' justifiable expectations in the context of a breach of contract action." *Advancemed,* 2006

WL 1007467 at *3. "Good faith merely directs attention to the parties' reasonable expectations; it is not an independent source from which rights and duties evolve." *Gilson,* 2005 WL 1899471 at *2. See also *Lubbock Beverage Co., Inc. v. Miller Brewing Co.,* 2002 WL 3201126 at * 14-15 (N.D. Texas 2002) (holding that the U.C.C.'s "contractual duty of good faith and fair dealing gives rise only to a cause of action for breach of contract and does not give rise to an independent tort cause of action.). Heinz implicitly acknowledges this distinction when it suggests that although Count III should be dismissed so that it can "be pled within the breach of contract claim." (Defense Brief, Dkt. 8-1 p. 10). Accordingly, the Court dismisses Count III, but as is the case with the estoppel-based claims, it does so while allowing Off-Spec an opportunity to re-plead its breach of contract claims to incorporate an alleged breach of the good faith covenant, to the extent such a covenant is consistent with Oregon law.

However, the Court declines Heinz's invitation to constrain the parameters of the duty of good faith applicable to this case. Heinz contends that Off-Spec's allegations regarding the good faith covenant do not arise from a specific contractual duty or obligation or from "the performance and enforcement of the contract," as Heinz contends is required under the UCC.  Off-Spec specifically alleges that Heinz breached its duty of good faith, among other things, by "refusing to provide Off-Spec with the more valuable other Plant by-products" identified in the original written agreement. Whether the concept of good faith embodied in Oregon's U.C.C. also extends to other actions by Heinz of which Off-Spec complains are issues better left for decision at a later date.

MEMORANDUM DECISION AND ORDER ON MOTION TO DISMISS - 19

**6.        Attorney Fees**

Finally, the Court grant's Heinz's request to strike the Complaint's claim for attorneys fees and costs. Such a request is appropriate, given the Court's conclusion that Oregon rather than Idaho law applies to this dispute. State statutes on attorney fees are substantive rather than procedural matters, and therefore, the state whose law applies to the case in general would also govern any disputes concerning the availability of attorney fees. *In Re Larry's Apartment, LLC.,* 249 F.2d 832, 838 (9th Circuit 2002). Here, that state is Oregon and so the attorney fee provisions of Idaho Code 12-120(3) have no bearing on this case. The request for attorney fees arising under that statute should be removed from any amended complaint Off-Spec may choose to file.  Off-Spec may amend the claim or prayer for attorney fees and costs to include such other Oregon or federal statutory or rule authority as Off-Spec may contend provides authority for an award of costs, or an award of fees.

## ORDER

1.        Defendant's Motion to Dismiss/Motion to Strike (Dkt. 8) is **GRANTED IN PART AND DENIED IN PART,** as follows:

(A).    Counts Three, Four, Five, and Seven are **DISMISSED, BUT WITH LEAVE TO AMEND**, on the particulars described in this Decision and Order**.**

MEMORANDUM DECISION AND ORDER ON MOTION TO DISMISS - 20

(B).    The Court hereby strikes the  claim for attorney fees under Idaho Code
        12-120(3). Plaintiff may amend its claim for attorneys fees and costs,
        as described in this Decision and Order.

2.      Plaintiff may file an amended complaint consistent with this Decision
        and Order.  Any such amended complaint must be filed **within
        fourteen days of the date of this Order.**



DATED:  **March 29, 2017**

_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge