UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| OFF SPEC SOLUTIONS, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> H.J. HEINZ COMPANY, L.P., <br><br> Defendant. | Case No. 1:16-cv-00123-REB <br><br> **MEMORANDUM DECISION AND ORDER ON MOTION TO DISMISS** |

Currently pending before the Court is Defendant H.J. Heinz Company's Motion to Dismiss (Dkt. 22). By this motion, Heinz requests that the Court dismiss Plaintiff's third cause of action for breach of warranty, which was included in the Amended Complaint (Dkt. 21) after the Court ruled on the initial Motion to Dismiss. This is the second motion to dismiss which Defendant has filed in this case. Because the operative contract contains an ambiguity that cannot be resolved at this stage, the Court denies the motion.

### DISCUSSION[1]

The Court's discussion herein addresses only a single type of claim–one for a breach of express warranties. Though Heinz's brief addresses other types of warranties, principally the implied warranty of merchantability and the implied warranty of fitness for a particular purpose,

---

[1] The Court hereby incorporates by reference sections I and II of its prior order, which discuss the background of this case and the legal standards applicable to a motion to dismiss. (See Dkt. 19).

**MEMORANDUM DECISION AND ORDER ON MOTION TO DISMISS - 1**

Off-Spec concedes that these types of warranties have likely been disclaimed.[2] Off-Spec argues that Heinz created express warranties in two ways, first by specific language in the contract itself and second, by certain extra-contractual statements, both oral and written. The Court addresses the alleged warranties contained in the contract itself first.

### A. Express Warranties in the Contract

Heinz's argues that there are no viable express warranty claims based upon paragraph 11 of the Agreement, which is entitled the "Independent Investigation" clause, which reads:

> 11. INDEPENDENT INVESTIGATION. It is understood and acknowledged by Off-Spec Solutions that it is purchasing and using the Plant by-products pursuant to its own independent investigation and that Heinz has made no representations or warranties other than those expressly contained herein. Except as set forth herein, **HEINZ HEREBY EXCLUDES ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, AND EXPRESSLY EXCLUDES ANY AND ALL WARRANTIES AS TO MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. IT IS UNDERSTOOD BY BOTH PARTIES THAT THE INTENDED USE FOR PLANT BY PRODUCTS IS FOR USE AS ANIMAL FEED.**

(Amended Complaint, Dkt. 21 at ECF p. 16).

The crucial question on this motion concerns the proper interpretation of the final sentence of the Independent Investigation paragraph, which (to reiterate) states: "It is understood by both parties that the intended use for plant by products is for use as animal feed." Heinz argues that this sentence is subject to one interpretation and one interpretation only, and that its intention was simply to *reinforce* the disclaimer of warranties contained in the sentence

---

[2] More particularly, Off Spec's opposition concedes that any implied warranties have been disclaimed "for purposes of this motion only." The Court assumes that this verbiage made its way into Off Spec's brief through inattention, because a party facing a dispositive motion is obligated to submit arguments in response to that motion for any theory that party believes may be viable. Accordingly the Court treats all implied warranty claims as having been actually waived, not theoretically or for the sake of argument.

**MEMORANDUM DECISION AND ORDER ON MOTION TO DISMISS - 2**

preceding it. In other words, Heinz insists that the final sentence of Paragraph 11 was inserted into the contract simply to underline the fact that Off-Spec was responsible for its own investigations into the suitability of the potato by-products as animal feed. Off Spec, on the other hand, argues that the last sentence of Paragraph 11 was intended as an *exception* to the general rule contained in the previous sentence, which states that Heinz is disclaiming all warranties "except as specifically stated herein." While each side argues that the language of Paragraph 11 clearly supports their own interpretation and no other, in the Court's view both possibilities are potentially viable. The language is therefore ambiguous. Further, on the record before the Court and without the benefit of discovery, it is simply not possible to tell which party's interpretation is the correct one.

Nor does the Court agree with Heinz's assertion that dismissal is required due to certain requirements of Oregon's version of the Uniform Commercial Code regarding the creation of express warranties. No magic words are required to create a warranty, and a seller need not use statements like "promise" "warrant" or "guarantee." Further, Section 72.3130(a) of the Oregon Revised Statutes, which concerns the manner by which express warranties are created, provides that, "any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Or. Rev. Stat. § 72.3130(a). The statement that "it is understood by both parties that the intended use for plant by products is for use as animal feed," satisfies this requirement, at least in the context of a motion to dismiss. The Court is unpersuaded by Heinz's argument that this description is not specific enough to constitute a "core description" of the goods for purposes of creating express warranties under the U.C.C. Heinz may well have intended the last sentence of paragraph 11 to be a warning that Off

Spec would be on its own in deciding whether the by products would be useable for animal feed rather than as a guarantee that the good would be suitable for that purpose. However, as explained above, the language is at best ambiguous and not subject to resolution at this stage of the litigation.

      **B.**      **Extra Contractual Statements.**

The Court next addresses Off Spec's argument that certain extra contractual statements also created express warranties that the potato by products would be useable as animal feed. At a minimum, extrinsic statements, whether oral or written, will be admissible along with other information about the parties' course of dealing to assist the Court in construing the terms of the contract. *See, e.g.. Hammond v. Hammond,* 269 P.3d 691, 694 (Or. Ct. App. 2011) (holding, as a matter of general contract law, that extrinsic evidence is admissible to assist a Court in construing the terms of an ambiguous contract). The Court also notes that Oregon's version of the U.C.C. adopts a flexible approach to the admission of extrinsic evidence to interpret contracts subject to the U.C.C. In particular, ORS 72.2020 provides that even when faced with unambiguous contracts intended to be the final expression of the parties' agreement, courts may still take evidence regarding 1) the parties' course of dealing; 2) their course of performance; and 3) trade usages. *See Deerfield Commodities Ltd. v. Nerco, Inc.* 696 P.2d 1096, 1109 (Or. Ct. App. 1985) (quoting O.R.S. 72.2020 and ORS 72.2080). A conclusion that certain extrinsic evidence may ultimately be admissible to assist the Court in interpreting the terms of the contract does not, however, resolve the question of whether extra contractual representations can *themselves* create express warranties, separate from and independent of the language of Paragraph 11.

In making their arguments as to whether extra-contractual representations can be considered as express warranties in their own right, the parties focus on the presence of a merger clause in paragraph 17 of the agreement, which states, in its entirety:

> MODIFICATION. This Agreement contains all of the terms, warranties, representations, agreements, covenants, conditions, and provisions agreed upon by the parties and they shall not be altered or changed unless the change shall be in writing and signed by authorized officials of both parties.

Dkt. 21 at p. 17. Heinz argues that this is a traditional "merger" clause, barring the Court from considering extrinsic evidence that may contradict the express written terms of the Agreement. Off-Spec argues that the clause at issue was not conspicuous and, thus, under Oregon law it should not be given effect. (Response Brief at p. 17-19) (citing *Seibel v. Layne & Bowler, Inc.*, 641 P.2d 668 (Or. Ct. App. 1982).

In the Court's view, the merger clause has less importance to this dispute than the parties have assigned to it. Paragraph 17 does bear the somewhat misleading label of "Modification" and is also somewhat confusing in that it mixes standard "merger clause" language with instructions about how the contract may be modified. While in a perfect world it might have been preferable to keep these concepts separate, when read together with paragraph 11 it is evident that the parties understood that their written contract was intended to be the complete and entire expression of their agreement, particularly with respect to the issue of express warranties. Therefore, while the presence of an ambiguity as to whether the written contract contains an express warranty precludes summary judgment, extra contractual statements cannot be used to create a separate and independent source of liability.

Because the Court has decided the language of the contract is ambiguous, it need not rule on the question of whether certain documents (consisting primarily of emails and a solicitation

**MEMORANDUM DECISION AND ORDER ON MOTION TO DISMISS - 5**

for "Cattle Feed bid") that were not made part of the Amended Complaint can be considered in the context of a motion to dismiss. The Court also declines the parties' invitations to turn this motion to dismiss into one for summary judgment. Other than as discussed above, the issues in this case are not well-positioned to decide on a motion to dismiss. In particular, questions how an ambiguous contract should be construed are best left to the summary judgment stage, when the Court can consider them with the benefit of a fully developed record.

## ORDER

1.  For the reasons identified above, the Motion to Dismiss (Dkt. 22) is hereby **DENIED**.

2.  Heinz is directed to file an answer to the Amended Complaint **within 14 days of the date of this Order**, after which the Court will set a telephonic scheduling conference.



DATED: **September 1, 2017**

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge