UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| OFF-SPEC SOLUTIONS, LLC, an Idaho limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>H.J. HEINZ COMPANY, L.P., a Delaware limited partnership,<br><br>Defendant, | Case No.: 1:16-cv-00123-REB<br><br>**MEMORANDUM DECISION AND ORDER RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. 27)** |

Pending is Plaintiff's Motion for Partial Summary Judgment (Dkt. 27), in which Plaintiff Off-Spec Solutions, LLC ("Off-Spec") seeks the entry of an order making three specific holdings related to its claims. Having reviewed the briefing and supporting filings, participated in oral argument on March 13, 2018, and otherwise being fully advised, the Court enters the following Decision and Order:

## I. BACKGROUND

Off-Spec is in the business of managing and distributing food waste commodities. Am. Compl. ¶ 4 (Dkt. 21). Its core business involves transporting food waste away from production facilities and delivering it to animal producers that can use it as animal feed. *Id.* Defendant H.J. Heinz Company, L.P. (self-referred to as "Kraft-Heinz," but referred to herein as "Heinz"), operates a potato processing plant in Ontario, Oregon. *Id.* ¶ 5. In September 2014, Heinz held an auction to sell the right to purchase and haul away "press cake," one of several kinds of potato processing by-products, from its Ontario, Oregon potato processing plant. Plf.'s Statement of Fact ISO Mot. for Partial Summ. J. ¶¶ 6–8 (Dkt. 27-1). Off-Spec bid in and won the auction. *Id.*

After the auction, the parties worked on and entered into a final, written, agreement. In that process were sown the seeds of this dispute. Off-Spec alleges that on October 2, 2014, its principals Chris Salvador and Daniel Salvador met with Bob Pedracini, Heinz's plant manager, and Ashli Perdue, Heinz's plant operational risk manager, to discuss the contract terms. Am. Compl. ¶ 6 (Dkt. 21). During this meeting, Off-Spec alleges, Mr. Pedracini and Ms. Perdue told Messrs. Salvador that Heinz wanted Off-Spec to haul away *all* potato by-products and not just press cake. *Id.* ¶ 9. Because certain of the other by-products are more valuable than press cake, Off-Spec was eager to agree to this expansion of the rights they had won at the auction. *Id.* Thus, Off-Spec alleges, it was not surprised when the draft agreement Heinz presented to Off-Spec on October 18, 2014 purported to apply to all potato by-products and not just press cake. *Id.* ¶ 10. The parties ultimately executed a written agreement on or about November 22, 2014. *Id.* Ex. A (the "Agreement"). The agreement references "all solid potato by-product such as cull potatoes, fries, etc., Press Cake, dry peel, (hereinafter collectively referred to as 'Plant by-products') which results from Heinz's operation of" its Ontario plant. Agreement ¶ 2 (Dkt. 21).

After the agreement was executed, Heinz delivered press cake to Off-Spec but no other by-products. Am. Compl. ¶ 17 (Dkt. 21). As a result, Off-Spec brings this lawsuit and alleges that it is entitled to declaratory relief as well as damages for breach of contract, breach of warranty, and unjust enrichment. *Id.* ¶¶ 25–45. Heinz counterclaimed, seeking reformation of the Agreement in addition to damages for breach of contract and trespass. Def.'s Ans. and Aff. Defenses to Plf.'s First Am. Compl. and Def.'s Countercls. ¶¶ 58–77 (Dkt. 44).

Heinz disputes many of Off-Spec's allegations. Most significantly, Heinz says that no one told Messrs. Salvador in October 2014 that Heinz wanted to sell to Off-Spec all by-products rather than only press cake. Pedracini Decl. ¶¶ 3–7 (Dkt. 59-9); Perdue Decl. ¶ 29 (Dkt. 32). As

set out in Ms. Perdue's declaration, Heinz asserts it already had a contract to provide its cull potatoes and "fries" (potatoes lost during the production process) to another third party, so it would not have even contemplated providing those by-products to Off-Spec. *Id.* ¶¶ 12, 17. Heinz says that Off-Spec was aware of this. *Id.* ¶¶ 12, 15. Heinz maintains that it intended to sell Off-Spec only press cake.

According to Ms. Perdue, the first draft of the agreement she sent to Off-Spec mentioned only press cake. *Id.* ¶ 37. The redlined version of the draft agreement Daniel Salvador returned to Ms. Perdue retained, unedited, the paragraph indicating that Heinz would provide Off-Spec only press cake. *Id.* ¶¶ 38–39. However, when Ms. Perdue forwarded the redlined draft to an attorney in Heinz's out-of-state in-house legal staff, a revised draft was returned which included several changes. *Id.* ¶¶ 42–43. Among these were a redefinition of the agreement's scope to state it applied to all by-products rather than just press cake. *Id.* Ms. Perdue declared she noticed and removed certain other incorrect changes, but she did not notice the agreement scope had been redefined to include all plant by-products rather than only press cake. *Id.*

The central issue in Off-Spec's motion is whether the Agreement unambiguously requires Heinz to deliver to Off-Spec all plant by-products. Off-Spec maintains that the Agreement is unambiguous on its face and that even if there were a mistake in the drafting the Agreement is nonetheless enforceable against Heinz. Heinz counters that the Agreement is ambiguous and that extrinsic evidence shows there was no meeting of the minds as to by-products other than press cake. Heinz argues the reference to plant by-products rather than just press cake was a drafting error. Def.'s Opp. to Plf.'s MPSJ 2 (Dkt. 30).

Off-Spec moves for partial summary judgment, seeking an order holding that (1) the Agreement's language specifying it applied to "all solid potato by-product such as cull potatoes,

**MEMORANDUM DECISION AND ORDER RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT – 3**

fries, etc., Press Cake, dry peel" is unambiguous; (2) this language plainly required Heinz to sell to Off-Spec all solid potato by-product produced at Heinz's Ore-Ida plant, including cull potatoes, fries, press cake, and dry peel – and not just press cake; and (3) Heinz breached the written agreement by delivering only press-cake to Off-Spec. Mot. for Partial Summ. J. re: Breach of Contract 1–2 (Dkt. 27). Off-Spec's motion was filed concurrently with a statement of fact in support (Dkt. 27-1), a memorandum in support (Dkt. 27-2), and a declaration of Daniel Salvador (Dkt. 27-3).

In response, Heinz filed a memorandum in opposition (Dkt. 30), a statement of disputed facts in opposition (Dkt. 31), and a declaration of Ashli Perdue (Dkt. 32). Heinz also moved to continue or deny the motion for partial summary judgment under Fed. R. Civ. P. 56(d) (Dkt. 33). Off-Spec's response to the motion to continue included a second declaration of Daniel Salvador (Dkt. 36-1). Off-Spec also filed a reply memorandum supporting its partial summary judgment motion (Dkt. 37).

Heinz also moved to strike the second declaration of Daniel Salvador, alternatively seeking leave to file a surreply memorandum in opposition to the motion for partial summary judgment. (Dkt. 38). Heinz then filed a reply supporting its motion to continue (Dkt. 39). Off-Spec responded to the motion to strike (Dkt. 43) and Heinz replied (Dkt. 46).

The Court granted the motion to continue, to allow the parties to conduct targeted discovery prior to deciding the partial summary judgment motion (Dkt. 52). The Court's order set a schedule for supplemental briefing after some discovery had occurred. The Court also declined to strike the second declaration of Daniel Salvador but granted Heinz leave to file a surreply. (Dkt. 63.)

Off-Spec filed "Objections to Declaration of Ashli Perdue" in which it argued that the Court may not consider those statements of Ms. Perdue's that are "speculative, conclusory, misleading, and not based on personal knowledge." (Dkt. 57.) Heinz then filed a supplemental brief opposing Off-Spec's motion for partial summary judgment, accompanied by several declarations (Dkts. 59, 59-1 through 59-9). Finally, Off-Spec filed a supplemental brief supporting its partial summary judgment motion, accompanied by a declaration of counsel and a declaration of John Hepton (Dkts. 62, 62-1, 62-2).

A hearing on Off-Spec's partial summary judgment motion was held March 13, 2018.

## II. LEGAL STANDARD

1. **Summary Judgment Standard**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). There must be a genuine dispute as to any *material* fact — a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must

be believed, however implausible. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). However, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *See McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the non-moving party's case. *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000). This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *See Devereaux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by [his] own affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324. Where reasonable minds could differ on the material facts at issue, summary judgment should not be granted. *Anderson*, 477 U.S. at 251.

2. **Other Applicable Legal Standards**

This motion presents an issue of whether a contract is clear, or whether it is ambiguous. Under Oregon law,[1] "[u]nambiguous contracts must be enforced according to their terms." *Pac. First Bank v. New Morgan Park Corp.*, 876 P.2d 761, 764 (Or. 1994). "Extrinsic evidence regarding the circumstances underlying the formation of a contract may be considered to determine whether a contractual provision is ambiguous." *State ex rel. Dept. of Educ. v. Vantage*

---

[1] The Agreement specifies that New York law governs, but the parties agree that Oregon law should apply because the Agreement has no relationship to New York or New York law and because Oregon is the place of performance of the Agreement. The Court will apply Oregon law.

*Techs. Knowledge Assessment, LLC*, 261 P.3d 17, 22 (Or. App. 2011); *see also* ORS 41.740,[2] 42.220.[3] "A provision is ambiguous when it is reasonably susceptible to more than one meaning." *Vantage Techs.*, 261 P.3d at 22. "If a contract is ambiguous, the trier of fact will ascertain the intent of the parties and construe the contract consistent with the intent of the parties." *Pac. First Bank*, 876 P.2d at 764. "To interpret a contractual provision," courts first "examine[] the text of the disputed provision, in the context of the document as a whole. If the provision is clear, the analysis ends." *Yogman v. Parrott*, 937 P.2d 1019, 1021 (Or. 1997). If "the contractual provision at issue is ambiguous" the court proceeds "to examine extrinsic evidence of the contracting parties' intent." *Id.* at 1022 (citing ORS 41.740 for the proposition that "extrinsic evidence is admissible to 'explain an ambiguity' in a contract").

Stated simply, extrinsic evidence relating to the formation of an agreement can be used to show an ambiguity. And where there is an ambiguity, regardless of how it is shown, extrinsic evidence may be used to explain the ambiguity by reference to the parties' intentions.

Also, "it is the duty of a court to construe a contract as a whole employing any reasonable method of interpretation so that no part of it is ignored and effect can be given to every word and phrase." *New Zealand Ins. Co. v. Griffith Rubber Mills*, 526 P.2d 567, 569 (Or. 1974).

### III. DISCUSSION

Off-Spec seeks partial summary judgment on three, sequentially-related, issues. First, Off-Spec requests a ruling that the Agreement's definition of the products covered by the

---

[2] ORS 41.740 prohibits extrinsic evidence of the terms of a written agreement except in certain circumstances. One such circumstance relates to "evidence of the circumstances under which the agreement was made;" another is "to explain an ambiguity, intrinsic or extrinsic."

[3] ORS 42.220 provides that "[i]n construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language the judge is interpreting."

Agreement is unambiguous. Second, Off-Spec requests a ruling that this unambiguous language required Heinz to sell to Off-Spec all potato by-products and not just press cake. Third, Off-Spec requests a ruling that Heinz breached the Agreement by delivering only press cake.

As an initial matter, the Court will consider the circumstances under which the Agreement was made in deciding whether any of its terms are ambiguous. ORS 42.220; *Vantage Techs.*, 261 P.3d at 22. Those circumstances show factual disputes regarding the negotiations leading to the Agreement's formation and regarding what each party believed was the Agreement's scope.

Off-Spec's declarant Daniel Salvador states that Heinz plant manager Bob Pedracini told him at an in-person meeting that "Heinz wanted Off-Spec to haul away all potato by-products generated at the Ore-Ida facility, including cull potatoes, press cake, dry peel, and fries." Salvador Decl. ¶ 10 (Dkt. 27-3). Salvador goes on to say that the "agreement Heinz emailed on October 17, 2014, reflected our discussions with Bob and Ashli to change the deal, so that Off-Spec would purchase all solid potato by-products produced at the Ore-Ida plant, and not just the press cake." *Id.* ¶ 13.

The statements of Heinz's declarants Mr. Pedracini and Ms. Perdue directly contradict these statements by Mr. Salvador. Ms. Perdue says that "during the Pre-Contract meeting, no one from Kraft Heinz or Off-Spec mentioned or suggested that Off-Spec would purchase any by-product other than press cake. . . . Neither Bob nor I ever met with either Chris Salvador or Daniel Salvador during Kraft Heinz's contract negotiations with Off-Spec."[4] First Perdue Decl.

---

[4] Ms. Perdue's declaration also details the process by which, in her perception, the Agreement came to include a mistake in the paragraph defining its scope. First Perdue Decl. ¶¶ 36–48 (Dkt. 32). Although Off-Spec filed an objection to Ms. Perdue's declaration (Dkt. 57), asserting that some of her statements are inadmissible, the Court does not rely on any of the

¶¶ 29, 31 (Dkt. 32). Mr. Pedracini says that he "do[es] not recall ever meeting with anyone from Off-Spec prior to signing the contract." Pedracini Decl. ¶ 4 (Dkt. 59-9). He also says that before he signed the Agreement he "had not been involved in any negotiations or contract discussions with Off-Spec" and that he "never promised, offered, or agreed that Kraft Heinz would sell any potato by-products other than press cake." *Id.* ¶¶ 3, 5. Finally, he says that he "never indicated to Off-Spec that Off-Spec was ever entitled to purchase potato by-products other than press cake, nor have I been present for a conversation where anyone made such a representation. I am not aware of any person making such representations to Off-Spec on Kraft Heinz's behalf." *Id.* ¶ 6. Thus, there is a stark disagreement as to the circumstances surrounding the formation of the Agreement.

Off-Spec, however, does not seek summary judgment related to the Agreement's formation. Hence, the disagreement over the lead-up to the Agreement does not necessarily sink Off-Spec's request for summary judgment. The details of the disputed facts do, however, provide context for the Court's analysis of whether the Agreement, or any term in it, is ambiguous. Equipped with this background, the Court now undertakes to answer that question.

Paragraph two of the Agreement, labeled "PRODUCT," states that

> Heinz shall deliver and Off-Spec Solutions shall remove and purchase all solid potato by-product such as cull potatoes, fries, etc., Press Cake, dry peel , (hereinafter collectively referred to as "Plant by-products") which results from Heinz's operation of its plant located at 175 N. E. 6th Avenue, Ontario, Oregon (hereinafter referred to as the "Plant"). Delivery by Heinz shall be at the plant. The terms and conditions of this contract shall be retroactive to the commencement date identified.

Agreement ¶ 2 (Dkt. 21 Ex. A).

---

challenged statements in deciding the instant motion. The Court does not opine at this time as to the admissibility of any particular statements in Ms. Perdue's declaration or as to Off-Spec's challenges thereto.

**MEMORANDUM DECISION AND ORDER RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT – 9**

The Court is persuaded, as indicated at the motion hearing, that there is no genuine dispute as to the Agreement's definition of "plant by-products." There is no ambiguity in the definition; it plainly applies to "all solid potato by-product" including the listed examples. It may be, as Heinz argues, that this definition is not what it intended to draft and it is the result of a mistake in its internal legal chain.[5] But the plain language appearing in the four corners of the Agreement admits no ambiguity. The Court will therefore grant the first request in Off-Spec's motion for partial summary judgment.

However, genuine disputes of material fact preclude summary judgment as to Off-Spec's other requests. Off-Spec's second request is for a ruling that "this language" – referring to paragraph two of the Agreement – "plainly required Heinz to sell to Off-Spec **all** solid potato by-product . . . and not just press cake." Mot. for Partial Summ. J. 1 (Dkt. 27). Paragraph two does indeed evidence an obligation undertaken by Heinz to sell all plant by-products, including but not limited to press cake. But when this paragraph is considered in the context of the entire Agreement and the circumstances surrounding its formation, there is an ambiguity that cannot be resolved at summary judgment.

Paragraph three of the Agreement is entitled "PAYMENT" and provides in part that "Off-Spec Solutions shall pay Heinz, monthly payments (FOB the Plant) in accordance with **Addendum A**, attached hereto and made a part hereof, for all Plant by-products removed from the Plant." Agreement ¶ 3 (Dkt. 21). Addendum A, in its entirety, provides as follows:

**ADDENDUM A**
Price will be based on $4 bushel Corn CME. = $9.95

EXAMPLE: This is using the factor of 2.487. Simple example shown here (2.487 x $1) = $2.487 Press Cake price.

---

[5] The posture of the instant motion does not require the Court to decide whether the Agreement includes a mistake, or, if so, what the consequences of that mistake might be.

    Corn bu $1.00 = Press Cake $2.487
    Corn bu $2.00 = Press Cake $4.97
    Corn bu $3.00 = Press Cake $7.462
    Corn bu $4.00 = Press Cake $9.95
    Corn bu $5.00 = Press Cake $12.435
    Corn bu $6.00 = Press Cake $14.922
    Corn bu $7.00 = Press Cake $17.409
    Corn bu $8.00 = Press Cake $19.896

    The pricing assumes that the dry-weight percentage of the Plant by-products average around 20% Dry Matter.

    The grid price will be figured as follows: The Friday closes will be averaged for a three month period on the near term CBOT corn contracts and that price will be used to price the preceding quarter. Example: The Friday average closes in the front month for January, February, and March will determine the price for April potatoes. Adjustments will not be made on a more frequent than quarterly basis.

Agreement Addendum A (Dkt. 21).[6]

    Thus, some "price" under the Agreement is pegged to the price of corn bushels on the CME, but it is not clear what product or products are to be so-priced, or – more confusingly – what amount, or volume, or other identifiable "quantity" is to be tied to that price.[7] Notably, the pricing matrix in the Addendum is the same as appeared in the original draft of the Agreement when it referred only to press cake, and even though the record is clear that both sides to this dispute agreed that the by-products *other* than press cake were more valuable than press cake (discussed *infra*).

    The other express references in the Addendum are to press cake. Off-Spec argues that the Addendum sets the price for *all* plant by-products as 2.487 times the quarterly average of the

---

    [6] The formatting, but not the contents, of the Addendum has been edited slightly for brevity and clarity.

    [7] At the hearing on this motion, counsel represented that CME refers to the Chicago Mercantile Exchange. The Agreement does not define the term.

price of a bushel of corn. In contrast, Heinz argues that the Addendum sets the price *only* for press cake and that the Agreement sets no price for other by-products.[8]

Hence, it is ambiguous both as to whether the Addendum's single reference to "plant by-products," in context, purports to set a price for *all* plant by-products, and as to how that price is to be calculated.

Off-Spec emphasizes the fact that the Addendum includes the word "example" twice as a preface to the list of different dollar values based on the price of corn. Such a term, Off-Spec asserts, illustrates that the Addendum is consistent with the argument that the same pricing factor of 2.487 applies to all plant by-products and not just press cake. The Court agrees that this is a possible interpretation of the Addendum and that it would be consistent with the Agreement as a whole. But this is not the only reasonable interpretation. And, Off-Spec's interpretation would render the term "Press Cake" – which appears nine times in the Addendum – superfluous. Adopting Off-Spec's interpretation also would be inconsistent with the requirement in Oregon law that it is the Court's duty "to construe a contract as a whole employing any reasonable method of interpretation so that no part of it is ignored and effect can be given to every word and phrase." *New Zealand Ins. Co.*, 526 P.2d at 569.

Moreover, Off-Spec itself alleges that "the re-sell value of some of the other by-products can be higher than the re-sell value of press cake." Am. Compl. ¶ 9 (Dkt. 21). It claims Heinz breached the Agreement by "failing or refusing to provide Off-Spec all Plant by-product and in only providing it the *much less valuable press cake*." *Id.* ¶ 31 (emphasis added). The parties were

---

[8] The parties do not discuss whether or how ORS 72.3050, relating to an "open price term" in UCC contracts, might apply to the Agreement. Presumably this is because Off-Spec argues the Agreement sets the price as to all plant by-products and Heinz argues the Agreement does not apply to any plant by-products besides press cake, so there is no price term to set.

**MEMORANDUM DECISION AND ORDER RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT – 12**

free, of course, to strike any bargain they wished. But the interpretation Off-Spec urges is made less likely by its own admissions that other by-products are worth more than press cake.

However, the Court is similarly unconvinced by Heinz's argument that the Addendum unambiguously fails to set the price for all plant by-products. The first sentence of the Addendum does not expressly reference press cake, plant by-products, or any other goods to be sold under the Agreement, and it provides enough information to calculate the 2.487 factor used in the examples that follow it. The Addendum also does mention, as referenced above, "Plant by-products" after the examples.

The Court further notes that neither the Agreement nor Addendum A describes the unit of weight or volume for the goods. The Court presumes, without deciding, that the parties' course of performance may establish the unit for press cake. ORS 71.3030(1), (4). But because Heinz never delivered other by-products to Off-Spec under the Agreement, it is not clear that course of performance can establish the units for by-products other than press cake.[9] This results in an additional ambiguity. That is, with respect to by-products besides press cake, the Agreement is ambiguous both as to the price and as to the unit of weight or volume. Stated differently, even if Off-Spec's interpretation were unambiguous that the price of all by-products and not just press cake is 2.487 times the price of a bushel of corn, neither the Agreement nor the parties' course of performance establishes whether that pricing factor is per pound, or bushel, or ton, or some other

---

[9] The Court acknowledges, and the parties would be well aware, that there would be a course of dealing between Heinz and other entities regarding prices assigned to removal of by-products other than press cake.

**MEMORANDUM DECISION AND ORDER RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT – 13**

commodity unit of the by-product. Nor is there evidence in the record that the same units apply for each kind of by-product.[10]

It is apparent, then, that the Agreement's pricing structure is ambiguous with respect to plant by-products besides press cake because it is "reasonably susceptible to more than one meaning." *Vantage Techs.*, 261 P.3d at 22. Because the Agreement is ambiguous, extrinsic evidence of the parties' intent may be considered to resolve the ambiguity. *Pac. First Bank*, 876 P.2d at 764. As discussed *supra*, Off-Spec's declarations provide evidence that Heinz intended to sell Off-Spec additional by-products (although it is debatable whether the evidence supports any particular price or unit term). On the other hand, Heinz's declarations provide evidence that Heinz did not intend to sell Off-Spec by-products besides press cake at *any* price.

Off-Spec seeks an order holding that the Agreement "required Heinz to sell to Off-Spec all solid potato by-product produced at Heinz's Ore-Ida plant, including cull potatoes, fries, press cake, and dry peel – and not just press cake." Mot. for Partial Summ. J. 1 (Dkt. 27). Despite the lack of ambiguity in the definition of "plant by-products," the Court must nonetheless deny the request because there is a genuine dispute of material fact as to whether the Agreement did impose such a duty on Heinz, in light of the ambiguities in the pricing structure.

Denying this summary judgment request, of course, is not tantamount to holding that Heinz had no such duty or that the Agreement applies only to press cake. The Court holds merely that the ambiguities in the pricing structure evidenced in Addendum A to the Agreement preclude ruling as a matter of law that Heinz had such a duty.

---

[10] The Court recognizes that the units could, perhaps, be supplied by a usage of trade. ORS 71.3030(3), (4). But the record lacks evidence of any applicable usage of trade, so the ambiguity cannot be resolved on the present record.

**MEMORANDUM DECISION AND ORDER RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT – 14**

Off-Spec bases its third and final request for summary judgment on its assertion that "Heinz breached the written agreement by delivering only press-cake to Off-Spec." Mot. for Partial Summ. J. 2 (Dkt. 27). This conclusion relies on the premise stated in its second request, that Heinz was obligated to sell Off-Spec all plant by-products and not just press cake. Because the Court is denying summary judgment on that request, the third request must also be denied.

The Court does not at this time consider the parties' arguments regarding whether the written expression of the Agreement includes a mistake, whether excusable or not. The Court also does not consider how the parties' course of performance under ORS 71.3030 affects the Agreement's interpretation or the parties' obligations, other than as noted *supra*. Because the Court concludes there are genuine disputes of material fact precluding summary judgment as to Off-Spec's second and third requests, there is no need to consider these arguments at this time.

## IV. CONCLUSION

The *definition* of "plant by-products" in the Agreement is unambiguous and includes "all solid potato by-product such as cull potatoes, fries, etc., Press Cake, [and] dry peel." Nonetheless, the Agreement's pricing structure is ambiguous and extrinsic evidence calls into question whether Heinz was obligated to sell Off-Spec plant by-products besides press cake. Therefore, the Court will deny Off-Spec's motion for summary judgment to the extent it seeks an order holding that Heinz was obligated to sell all plant by-products to Off-Spec or that Heinz breached the Agreement by delivering only press cake.

\ \ \

\ \ \

\ \ \

\ \ \

# V. ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Dkt. 27) is **GRANTED IN PART AND DENIED IN PART**. To wit: the Court **GRANTS** Plaintiff's motion to the extent it seeks a holding that the language contained in the parties' written agreement requiring Heinz to deliver and Off-Spec to purchase "all solid potato by-product such as cull potatoes, fries, etc., Press Cake, dry peel" is unambiguous. The Court otherwise **DENIES** Plaintiff's motion.



DATED: **March 28, 2018.**

_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge